**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LANAI KNOX, | 3:06-CV-555-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CENTRIC GROUP, LLC, et al., | |
| Defendants. | |

Before the court is Defendants' Motion for Summary Judgment. (Doc. #32.) Plaintiff has opposed (Doc. #37) and Defendants have replied (Doc. #42). Having read the papers, and carefully considered the arguments and the relevant legal authority, and with good cause appearing, the court denies the motion.

## I. BACKGROUND

This is an action for employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* Plaintiff alleges gender harassment, sexual harassment due to a hostile work environment, and retaliatory termination. (Doc. #1.) The following facts are not in dispute by either party:

Defendant is a privately owned company headquartered in St. Louis, Missouri. Its wholly-owned subsidiary, Keefe Commissary Network, LLC ("KCN") provides outsourcing services to these institutions. Plaintiff worked at a KCN facility in Sparks, Nevada from January 1999 until her termination on October 14, 2003. (Doc. #32 at 2.)

///
///

1

Plaintiff began her employment with KCN as a clerk responsible for filling inmate orders. (*Id.* at 3.) Plaintiff was made a First-level Supervisor in 2000. Plaintiff was again promoted to the position of Supervisor in 2001. (Doc. #37 at 3.)

Beginning in December 2002, Plaintiff alleges that Defendant Mike Leland ("Leland"), a regional vice-president, began to sexually harass her in the workplace. Leland allegedly called Plaintiff derogatory names and made demeaning comments about her. (Doc. #1 at 3, ¶ 12.) Over the course of 2002, Defendant Brian Dudley ("Dudley"), a supervisor, allegedly engaged in similar conduct. In February 2003, Plaintiff contacted Rich Gray ("Gray") with complaints about her compensation and verbal harassment by Dudley and Leland. Gray was Leland's supervisor and responsible for KCN operations.

In July 2003, Plaintiff and Robert Maes ("Maes"), one of her supervisors, were confronted about rumors of an alleged relationship. They each signed letters written by Leland indicating that they acknowledged a prior relationship between them that had now ended, and that this violated the company's antifraternization policy. (Doc. #32, Exs. N and T.) Maes' letter also referred to an initial conversation regarding this matter on March 25, 2003 where he denied an ongoing relationship or any inappropriate conduct. (*Id.* at Ex. T.) Plaintiff's letter did not contain any references to an earlier conversation on this subject.

Plaintiff's direct supervisor was subsequently changed from Maes to Dudley. (*Id.*) Dudley was moved into Plaintiff's office and assumed some of her responsibilities. Plaintiff was eventually returned to the office, which she then shared with Dudley. (Doc. #32 at 5.)

Plaintiff, represented by counsel, made a written complaint to KCN President Jack Donnelly on August 22, 2003 alleging sexual harassment, discrimination, and retaliatory conduct. Vice President of Human Resources Cindy Murdoch and Gray conducted an investigation and interviewed several employees, ultimately concluding that Plaintiff's discrimination and retaliation claims were unsupported. KCN contends that as a result of these interviews, they discovered evidence that Maes and Plaintiff had violated the company's antifraternization policy and had lied about their relationship. (Doc. #32 at 10.) KCN also

concluded that Plaintiff had improperly administered an employee bonus program. As a result of these findings, KCN terminated Plaintiff in October 2003.

Plaintiff filed a discrimination complaint with the Nevada Equal Rights Commission ("NERC") on November 24, 2003. The case was subsequently transferred to the United States Equal Employment Opportunity Commission ("EEOC"), which issued a right-to-sue letter in July 2004.

Plaintiff has alleged four causes of action. Count I alleges that KCN maintained a hostile work environment by permitting various acts of sexual harassment, including the offensive comments made by Dudley and Leland. (Doc. #1 at 5.) Count II alleges disparate treatment based on gender with respect to job classifications, assignments, wages, and Plaintiff's eventual termination. (*Id.* at 7.) Count III alleges that KCN retaliated against Plaintiff through unjust discipline, suspension, termination, and revoking her health benefits. (*Id.* at 9.) Count IV of the complaint has been voluntarily dismissed by Plaintiff. (Doc. #37 at 1.) Defendants have moved for summary judgment on all remaining claims.

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

"A plaintiff alleging employment discrimination 'need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Davis v. Team Electric Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)). An employee's right to a full trial should be zealously guarded in light of the difficulty in proving an employment discrimination claim. *Id*. (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004)).

## III. DISCUSSION

### A. PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE

Plaintiff has objected to portions of the affidavits of Murdoch and Gray because they are based on inadmissible hearsay, lack personal knowledge, and are based on speculation. Because the court did not rely on this evidence in deciding the present motion for summary judgment, the court will not rule on Plaintiff's objections at this time.

### B. STATUTE OF LIMITATIONS FOR DISCRIMINATION CLAIMS

Defendant argues that Counts I, II, and III should be barred because an individual has ninety days to file a claim upon receiving a right-to-sue notice from the EEOC. (Doc. #32 at 21 (citing 42 U.S.C. § 2000e-5(e)(1)).) On July 29, 2004, the EEOC sent Plaintiff a "Notice of Rights" indicating that it was unable to determine a violation of the applicable statutes and that she had ninety days to bring a complaint. Plaintiff argues that she never received this notice. She filed her complaint on October 19, 2006.

Equitable tolling may apply to the ninety-day statute of limitations upon a showing that a litigant exercised due diligence in preserving her legal rights. *Irwin v. Veterans Admin.*, 498 U.S. 89, 95 (1990); *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992). According to 29 CFR § 1601.7(b), a complainant must "provide notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." Plaintiff sent several letters to the EEOC before and after it issued the right-to-sue notice indicating that her address had changed. (Doc. #37, Ex. #4.) Plaintiff also made phone calls to the EEOC inquiring about the status of her claims that went unanswered until the fall of 2006, when a representative indicated that the right-to-sue notice had issued in 2004 and had been sent to Plaintiff's old address. (*Id.* at Ex. #5.) Plaintiff filed her complaint soon after learning this information.

The court finds that Plaintiff was diligent in keeping the office apprised of her change of address and inquiring about the status of her claim through telephone calls and letters. *Pole v. Citibank*, 556 F.Supp. 822, 823 (D.C.N.Y 1983). Moreover, Plaintiff's counsel reasonably

1  believed that she would be notified when the letter issued, though this did not occur. *Id.* While
2  Plaintiff waited as long as eight months between her attempts to communicate with the EEOC
3  regarding the right-to-sue notice, that delay was not unreasonable given the amount of time
4  these types of cases take to be resolved. *Id.* (finding under similar circumstances that an
5  eleven-month delay was not unreasonable). Furthermore, Defendants have not demonstrated
6  how they have been prejudiced by a lack of access to Plaintiff's EEOC file, which presumably
7  contains the same information that can be produced during discovery. Therefore, the court
8  finds that equitable tolling applies so that Plaintiff's claims are saved from being time-barred.

**C.   STATUTE OF LIMITATIONS FOR PAY DISCRIMINATION CLAIMS**

In her third cause of action, Plaintiff alleges that the bonus structure at KCN is discriminatory because male supervisors received $250-$500 per month, while female supervisors received a $500-$550 quarterly bonus. On an annualized basis, Plaintiff claims that female supervisors at KCN earned significantly less than their male counterparts. Title VII of the Civil Rights Act of 1964 requires a plaintiff to file a charge of discrimination within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). KCN argues that the decision to implement the bonus structure underlying Plaintiff's disparate pay claims occurred in 2002, and hence her November 24, 2003 charge is untimely. KCN relies on *Ledbetter v. Goodyear Tire & Rubber Co.,* 127 S.Ct. 2162, a case involving a pay system that was facially discriminatory and neutrally applied. The *Ledbetter* plaintiff did not allege that any discriminatory acts occurred within the Title VII statutory period, but rather that her paychecks would have been larger if she had been evaluated in a nondiscriminatory manner at an earlier point in time. *Id.* at 2167. The Supreme Court held that a disparate pay claim under Title VII must be filed within 180 or 300 days of the pay decision even where as a consequence, there is a continuing pay disparity several years later.

/ / /
/ / /
/ / /

6

However, since Defendants filed their motion, Congress has responded to the *Ledbetter* decision. On January 29, 2009, the President signed into law the "Lilly Ledbetter Fair Pay Act of 2009" ("the Act"). The Act adds the following provision to Title VII:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, *or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid*, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, § 3, 123 Stat. 5, 5-6 (emphasis added). The Act retroactively applies "to all claims of discrimination in compensation under Title VII … that are pending on or after" May 28, 2007. *Id.* § 6. Because the challenged pay practice was the prevailing policy when Plaintiff was terminated, and she filed her complaint in 2006, her discrimination charges are timely.

Moreover, the facts in this case are distinguishable from *Ledbetter*. Plaintiff is not challenging the present effects of a discriminatory practice that occurred prior to the charging period. Rather, she is alleging that the pay system as administered *during* the statutory period was facially discriminatory. It is a well-settled proposition that "an employer violates Title VII and triggers a new EEOC charging period whenever the employer issues paychecks using a discriminatory pay structure." 127 S.Ct. at 2174 (citing *Bazemore v. Friday*, 478 U.S. 385 (1986)). Therefore, regardless of the passage of the Act, Plaintiff's disparate pay claims are not time-barred.

**D.  HOSTILE ENVIRONMENT SEXUAL HARASSMENT (Count I)**

Plaintiff's claim presents a "hostile or offensive work environment" theory of liability for sexual harassment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986). To survive summary judgment, Plaintiff must show that there are genuine factual disputes as to (1) whether a reasonable woman would find the gender-based conduct at KCN was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (2)

1  whether KCN, once apprised of this behavior, failed to take adequate remedial and disciplinary
2  action. *Steiner v. Showboat Op. Co.*, 25 F.3d 1459, 1462-63 (9th Cir. 1994) (citing *Ellison v.
3  Brady*, 924 F.2d 872, 879, 881-83 (9th Cir.1991)). The required showing of severity varies
4  inversely with its frequency. *Ellison*, 924 F.2d at 878.

5         After reviewing the papers and exhibits submitted by the parties, the court finds that
6  factual issues still remain as to whether the work environment was abusive. For example, the
7  actual cause of the office reorganization is disputed, and it is unclear why Dudley was
8  designated as Plaintiff's direct supervisor given the complaint she had previously made against
9  him. Neither is it evident that Leland had a reasonable basis to refuse Plaintiff's request to
10 change this structure, given the likelihood that it would lead to future problems. More
11 generally, it is unclear to what extent various KCN supervisors were unresponsive to Plaintiff's
12 complaints, as KCN does not appear to address this aspect of Plaintiff's claim. Finally, Plaintiff
13 raises the possibility that the disparity in pay between male and female supervisors at
14 contributed to the negative working environment. As a result, the question of whether a
15 reasonable woman would encounter gender-based hostility at KCN is not sufficiently clear to
16 warrant a grant of summary judgment.

17        Defendants argue that the gender-based comments are insufficient to state a Title VII
18 claim. (Doc. #32 at 26.) This contention is poorly suited to be resolved on summary judgment.
19 "[W]here the severity of frequent abuse is questionable, it is more appropriate to leave the
20 assessment to the fact-finder than for the court to decide on summary judgment." *Davis*, 520
21 F.3d at 1098. Plaintiff has alleged multiple instances of name-calling in her presence, including
22 five times she was compared to a stripper; two to three instances where there comments made
23 about her status as a single mother; regularly being called a "bitch" or some variant such as
24 "crazy bitch" or "emotional bitch"; and various cases where her supervisors seemed to question
25 her abilities because of her gender and remark that she was lucky to hold the position. (Doc.
26 #37 at 4; *id.* at 20.) Plaintiff was aware of similar comments about her made outside her
27 presence to other employees. Plaintiff also argues that this conduct forced her to seek medical
28

leave for stress, depression, and anxiety. (*Id.* at 18.) *See Harris*, 510 U.S. at 22 ("Title VII comes into play before the harassing conduct leads to a nervous breakdown."). After reviewing the record, the court is unable to conclude that as a matter of law, the alleged conduct was so sporadic or infrequent to be dismissed on summary judgment. *See Steiner,* 25 F.3d at 1461-63 (reversing a grant of summary judgment where, *inter alia*, plaintiff's supervisor called her "offensive names based on her gender" and criticized her using derogatory, gender-based language).

E.   **RETALIATION (Count III)**

KCN also seeks summary judgment on Plaintiff's retaliation claim. Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against an employee who makes a charge under this provision. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that: (1) she was engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Little v. Windermere Relocation, Inc.*, 265 F.3d 903, 913 (9th Cir.2001).

Once Plaintiff makes out a prima facie case, the burden shifts to KCN to advance a legitimate, non-retaliatory reason for any adverse action taken against her. *Steiner*, 25 F.3d at 1464-65 (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir.1988); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 730-31 (9th Cir.1986)). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (describing three-step burden shifting analysis). Once that is satisfied, the burden shifts back to Plaintiff, who must show that the "reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir.2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To establish pretext, "very little" direct evidence of discriminatory motive is sufficient, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." *Godwin v. Hunt Wesson Inc.*, 150 F.3d

1217, 1221 (9th Cir. 1998).

Here, Plaintiff can state a prima facie case for retaliation. Her termination occurred less than three months after she made her complaint regarding various forms of gender-based conduct to KCN management, which is clearly a protected activity. *Thomas v. City of Beavertown*, 379 F.3d 802, 8111 (9th Cir. 2004). Once the burden shifts to KCN, it can argue that there were legitimate, nondiscriminatory reasons for firing Plaintiff after it was disocvered that she violated the anti-fraternization policy[1], lied when questioned earlier about her relationship with Maes, and made various errors in administering a bonus program for her subordinates. (Doc. #32 at 28.)

Factual questions remain, however, for the last step of the burden-shifting analysis. While KCN has presented evidence supporting a good faith belief that the firing was justified, Plaintiff can set forth sufficient facts to demonstrate an issue as to whether these reasons are pretextual. First, a jury could infer retaliation from the timing of Plaintiff's protected conduct and her subsequent termination despite the justifications offered by KCN. *Miller*, 885 F.2d at 505.[2] KCN argues that when in viewed in context of the investigation, the timing of Plaintiff's termination is reasonable. While that may be so, it is a factual determination that falls within the province of the jury.[3]

It is also possible that a factfinder could infer that KCN used the investigation to construct a "paper trail" to justify terminating Plaintiff after she made her complaint to management. For example, KCN disclosed two versions of the same memo written by Leland,

---

[1] It seems unlikely, however, that violating the antifraternization policy per se motivated Plaintiff's termination, given that KCN was aware of this conduct several months earlier.

[2] A plaintiff may rely on the evidence establishing the prima facie case of retaliation to show that the articulated reasons for her termination are pretextual. *Miller*, 885 F.2d at 505 n. 8 (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981)).

[3] This is especially so because the jury must determine that the investigation had a legitimate purpose. *See infra*.

only one of which suggests that Plaintiff was dishonest about the existence of the relationship.[4] Moreover, prior to the investigation, Plaintiff had no significant problems with her work performance and was promoted on two different occasions.

Plaintiff also raises material issues with respect to the allegations that she misadministered the employee bonus program. In spite of the four-step progressive discipline policy in place at KCN, it partially based the termination on the first occasion it was discovered that she miscalculated bonuses. (Doc. #32, Ex. D; Doc. #37 at 26.) Furthermore, there is evidence that the company policy required that a manager was required to review and approve Plaintiff's bonus calculations, but that no other employee was disciplined for failing to properly supervise the bonus program. (Doc. #32, Ex. E, at 45 ll. 6-10.) While Plaintiff does not challenge the fact that she miscalculated the employee bonuses, a jury could choose to find that this played a merely pretextual role in her termination.

Even assuming that Plaintiff was dishonest about the true nature of her relationship with Maes, she can raise issues concerning the credibility of the proffered justifications for her termination when viewing the available evidence in a favorable light. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 147 (2000). A jury is best suited to weigh the competing theories for why Plaintiff was terminated. Accordingly, the motion for summary judgment is denied.

/ / /

/ / /

/ / /

---

[4] KCN disclosed two copies of the same memo written by Leland that materially differ from one another. One of them suggests that Plaintiff was truthful because she answered in the negative on March 25, 2003 when asked whether her and Maes "were having a relationship." (Doc. #32, Ex. O.) A copy of a substantially identical memo is also disclosed that appears to have been edited from the original. That memo suggested that Plaintiff answered in the negative when asked whether "*they had or* were having a relationship." (*Id.*, Ex. R, at 6.) In the latter case, Plaintiff would be lying, as she admitted to a prior relationship when requestioned in July 2006. Further complicating matters is that Plaintiff denies ever participating in the March 2003 conversation in the first place. (*Id.*, Ex. A-1, at 152 ll. 4-6.)

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #32) is **DENIED**.

DATED: March 30, 2009.

_____
UNITED STATES MAGISTRATE JUDGE